ALLIED SOUND, INC., Plaintiff–Appellant,

v.

Eddie W. NEELY and Johnny Jess Davis, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

May 19, 1995.

Order Denying Rehearing but Granting for Limited Purpose of Correcting Decision June 13, 1995.

Permission to Appeal Denied Nov. 27, 1995.

made by them while acting on behalf of KRI in its negotiations with Allied regarding the purchase and installation of lighting and sound equipment. The trial court granted the defendants' motion for summary judgment, finding that the complaint failed to state a claim upon which relief could be granted; that Allied had recovered a judgment in an earlier suit for the same damages sought in this action; and that Allied could not proceed against the defendants because it had earlier sued and recovered a judgment against the defendants' principal, KRI, for "the same set of facts basically." Allied appeals from the trial court's grant of summary judgment. We find that this is not an appropriate case for summary judgment.

## I

There are four issues raised on this appeal, the first two by the appellant and the second two by the appellee:

1. Does the complaint allege a claim upon which relief can be granted?

2. Does the doctrine of collateral estoppel bar Allied's claim for misrepresentation?

3. Is the complaint barred by T.C.A. § 28–3–105, the three-year statute of limitations applicable to actions for injuries to personal property?

4. Does Allied's prior action against KRI for breach of contract bar the present action for misrepresentation against officers and directors of KRI arising out of the same transaction?

The factual basis underlying the defendants' motion for summary judgment consists of the following in the record before us: the complaint filed in 1988 by Allied against KRI for breach of contract and other relief; the trial court's findings of fact and conclusions of law in that earlier case; and the order and memorandum of the United States District Court for the Middle District of Tennessee (Thomas A. Wiseman, Jr., J.) in the related case of *Allied Sound, Inc. v. Century Financial Services Group, Ltd.,* No. 3:90–0714 (June 17, 1991). Allied counters with the affidavit of

George F. Legg & Eric J. Morrison, of Stone & Hinds, P.C., Knoxville, for plaintiff–appellant.

Robert S. Stone, of McCampbell & Young, P.C., Knoxville, for appellee Eddie W. Neely.

P. Edward Pratt, of Baker, Donelson, Bearman & Caldwell, Knoxville, for appellee Johnny Jess Davis.

## OPINION

SUSANO, Judge.

This is an action for the tort of misrepresentation.[1] Allied Sound, Inc. (Allied), sued Eddie W. Neely and Johnny Jess Davis, officers and directors of Kingdom Resorts, Inc. (KRI), for alleged misrepresentations

---

1. At an earlier time, this tort was popularly known as the action for deceit. For a discussion of the elements of this tort and its historical development *see* Comment, *The Action of Deceit in Tennessee,* 30 Tenn.L.Rev. 624 (1963).

Larry Link, president of Allied. Also before us are two documents related to the contract between Allied and KRI, both of which are exhibits to the complaint. One is KRI's written acceptance of Allied's proposal. The acceptance is dated May 4, 1988, and is signed for KRI by the defendant Davis as its president. The other document, a letter to Allied also dated May 4, 1988, is signed for KRI by the defendant Neely in his capacity as vice president. Neither defendant submitted his affidavit.

## II

The complaint in the instant action was filed on April 2, 1991. It is the starting point for our analysis. The facts that follow are taken from the allegations of that document.

On or about February 10, 1988, Allied "agreed to enter into a contract" with KRI to supply and install lighting and sound equipment for KRI.[2] The defendants convinced Allied to begin work on the system before execution of a written contract and before payment of the agreed-to purchase price by representing to Allied that financing of the purchase price "could be acquired and that payment would be forthcoming." What the defendants knew, but intentionally did not tell Allied, was that the financing commitment of Century Financial Services Group, Ltd. (Century) was contingent "upon the furnishing [to Century] of a letter of credit from a lending institution."

KRI's attempts to secure a letter of credit were unsuccessful. Despite this, the defendants "knowingly and/or recklessly made false representations to [Allied] that financing was in place and complete when in fact it was not;" and continued to conceal the letter of credit requirement.

On or about April 22, 1988, Allied began delivering and installing the system "at the request of and in reliance upon the concealment and false statements made by defendants." On or about May 4, 1988, Allied had still not been paid so it told the defendants it "would discontinue work if financing was not available." The defendants then told Allied "that financing was available and complete." In reliance on these representations, which the defendants knew to be false, Allied continued to work on the project. At the same time, on or about May 4, 1988, KRI by its president, the defendant Davis, signed a purchase order to Allied for "the lighting and sound equipment supplied and being installed by [Allied]." The contract price is reflected in the purchase order as $725,000. Also on the same date, KRI by its vice-president, the defendant Neely, agreed in a letter to Allied to reimburse it for the interest it had paid on money borrowed by Allied to facilitate its performance. The interest was to be paid when the loan "funded by [Century]" was closed.

The complaint charges that the defendants intentionally and fraudulently misrepresented that the financing of the project had been "acquired"; that they intentionally and fraudulently concealed from Allied that KRI had failed to obtain a letter of credit; and that they intentionally and fraudulently concealed from Allied that the letter of credit was a prerequisite to Century's commitment. The complaint further alleges that the false representations were material to the business dealings between Allied and KRI, and were relied upon by Allied to its damage.

The complaint seeks $725,000 in compensatory damages, prejudgment interest, and $1,000,000 in punitive damages.

## III

This is the third lawsuit Allied has filed arising out of its negotiations and dealings with KRI. It initially sued KRI alone on September 19, 1988, for breach of contract. The Sevier County Chancery Court found that Allied and KRI had entered into a "valid and binding ... contract," and that KRI effectively waived its right to rely on a lack of financing (to negate the existence of the contract) by its representations regarding financing made at the May 4, 1988, meeting between representatives[3] of the parties.

---

2. The Chancellor's memorandum opinion in the breach of contract action against KRI indicates that the system was to be used in "the production of the Passion Play to be presented by" KRI.

3. The plaintiff apparently alleges in the instant case that the defendants Neely and Davis represented KRI's interests at that meeting.

The court awarded Allied a judgment for $725,000, together with a lien on the tract of land improved with the lighting and sound equipment. KRI subsequently filed for bankruptcy. Allied's judgment apparently remains unsatisfied.

On July 3, 1990, Allied sued Century in federal court in Nashville, alleging breach of contract, promissory estoppel and misrepresentation. Federal Judge Thomas A. Wiseman, Jr., granted Century summary judgment, holding that Allied had failed to prove the existence of a contract between Allied and Century, had failed to prove any reliance on or misrepresentations by Century officials, and had failed to show reasonable reliance on Allied's promissory estoppel claim. Finally, that court ruled that Allied's suit was also barred by the doctrine of collateral estoppel, because "[t]he finding [by Chancellor Rainwater in the earlier suit against KRI] that Allied reasonably relied on *KRI*'s representations was necessary to the chancery court's ruling that KRI was estopped from challenging the validity of its contract with Allied" (emphasis in original); and that therefore Allied was precluded from relitigating the issue of reasonable reliance. In effect, the federal court ruled that the state court determined that Allied relied on the representations made by KRI, and therefore, by operation of law (collateral estoppel), it would not be permitted to claim reliance on representations or promises made by Century.

## IV

Because he had heard the earlier breach of contract action against KRI, Chancellor Chester S. Rainwater, Jr., was designated to hear this case by interchange. In granting the defendants summary judgment, he stated that there were no genuine issues of material fact, that Allied's complaint failed to state a claim upon which relief could be granted, and that

   ... the Doctrine of Collateral Estoppel is applicable to this situation by virtue of the

fact that the damage, certainly a portion of the matter in issue, was fully, completely, and finally litigated in [the previous action against KRI], and that the plaintiffs here have recovered the amount of their alleged injuries and damages.

Additionally, the Court is of the opinion and finds that to allow this to proceed against these defendants and assuming that the plaintiffs in some way would be successful, would be granting two judgments on the same set of facts basically.

## V

■ The complaint obviously alleges a cause of action. It clearly sets forth all of the elements of the tort of misrepresentation; but in finding to the contrary, the Chancellor was not testing the legal sufficiency of the complaint as he would have done had he been faced with a pure Tenn.R.Civ.P. 12.02(6) motion. The defendants' various legal theories supporting their motion all rely, to some extent, on facts outside the complaint. Their theories of collateral estoppel and election of remedies require us to consider facts arising from Allied's prior suit against KRI and the resulting judgment in that case. Their statute of limitations theory is premised upon language found in Allied's 1988 complaint against KRI, rather than Allied's complaint in the current action. Since all of these theories rely upon matters outside the challenged complaint, we agree with the trial court that the defendants' 12.02(6) motion should be evaluated as one for summary judgment. *See* Tenn.R.Civ.P. 12.02 [4]; *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42, 44 (Tenn.App.1993).

■ The Rules of Civil Procedure provide that a motion for summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

**4.** "If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.*

Tenn.R.Civ.P. 56.03. Case law demonstrates that when a court is considering a motion for summary judgment, it "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993). A motion for summary judgment is "clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id.* at 210.

■ Generally speaking, a defendant moving for summary judgment may avail itself of one of two avenues: it may negate an essential element of the nonmoving party's claim, or it may establish an affirmative defense, such as the statute of limitations, that defeats the claim. *See Byrd* at 215, n. 5. The defendants here attempt to pursue both routes. They first argue that the doctrine of collateral estoppel, sometimes referred to as issue preclusion, negates the elements of reasonable reliance and damages in Allied's claim for fraudulent misrepresentation. The defendants also assert two affirmative defenses to Allied's claim: the three-year statute of limitations applicable to actions for injuries to personal property (on the theory that Allied referred in its earlier complaint against KRI to the existence of a contract entered "on or about February 10, 1988,") and election of remedies (on the theory that Allied's current tort claim against the defendants for fraudulent misrepresentation is repugnant to its earlier claim against KRI for breach of contract.)

■ Before delving into the defendants' efforts to negate two elements of Allied's claim for misrepresentation, we first address the doctrine of collateral estoppel upon which those efforts are based. Collateral estoppel precludes re-litigation of *individual issues which were actually and necessarily determined* in a former action between the named parties or their privies on a different cause of action. *Massengill v. Scott,* 738 S.W.2d 629, 631 (Tenn.1987); *Stacks v. Saunders,* 812 S.W.2d 587, 591 (Tenn.App.1990). In other words, "when an issue has been actually and necessarily determined in a former action between the parties, that determination is

conclusive upon them *in subsequent litigation.*" (emphasis added) *King v. Brooks,* 562 S.W.2d 422, 424 (Tenn.1978); *see also, Dickerson v. Godfrey,* 825 S.W.2d 692, 694 (Tenn. 1992); *Fourakre v. Perry,* 667 S.W.2d 483, 486 (Tenn.App.1983); *In re Adoption of Johnson,* 678 S.W.2d 65, 67 (Tenn.App.1984); *C.O. Christian & Sons Co., Inc. v. Nashville P.S. Hotel, Ltd.,* 765 S.W.2d 754, 756 (Tenn. App.1988).

■ The defendants attempt to negate the essential element of reasonable reliance in this misrepresentation case. They stress Judge Wiseman's conclusions in the federal court action against Century that

> Both the sworn testimony of Link, Allied's president, in the state court suit against KRI and the Chancellor's findings in that action establish that Allied relied only on representations of *KRI,* not Century.

> [T]wo questions at issue in this case— *whom* Allied relied on in completing performance and the *reasonableness* of that reliance—were directly at issue in the chancery court action. The finding that Allied reasonably relied on *KRI*'s representations was necessary to the chancery court's ruling that KRI was estopped from challenging the validity of its contract with Allied, and that Allied was therefore entitled to the contract price from KRI. Reasonable reliance is a critical element in two of Allied's causes of action in this suit— misrepresentation and promissory estoppel. Therefore, under Tennessee law Century may properly invoke the doctrine of collateral estoppel defensively to prevent Allied's relitigation of this issue.

(Emphasis in original). *Allied Sound, Inc. v. Century Financial Services Group, Ltd.,* M.D.Tenn., No. 3:90–0714 (June 17, 1991) at *6 and *9.

■ The Chancellor, in the earlier suit against KRI, concluded that Allied and KRI entered into a formal contract based upon discussions at the May 4, 1988, meeting. He specifically found that KRI, by its actions and conduct at the May 4 meeting, "effectively waived its right to rely upon the lack of financing" as a defense to the breach of contract action; and that these same actions

and conduct "induced [Allied] to further proceed with its performance of the contract." The defendants appear to argue that the Chancellor's findings, acknowledged by Judge Wiseman, that KRI made representations and that Allied relied upon them preclude a finding in the instant case that Allied relied upon misrepresentations by the defendants Neely and Davis. We find this to be curious argument. A corporation acts through its agents. An agent is one who undertakes to transact some business or to manage some affair, for another by authority and on account of the latter, and to render an account of it. *Security Federal Sav. and Loan Ass'n v. Riviera, Ltd.,* 856 S.W.2d 709, 715 (Tenn.App.1992). We note that "an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Brungard v. Caprice Records, Inc.,* 608 S.W.2d 585, 590 (Tenn.App.1980). There is nothing inconsistent between the misrepresentations charged in the instant case and the representations found in the earlier breach of contract case. In fact, they are totally consistent. If KRI made misrepresentations, some individual or individuals had to make them for it. The complaint in this litigation identifies those individuals as the defendants Neely and Davis.

The defendants also attempt to use the doctrine of collateral estoppel to negate the element of damages in Allied's current claim. They argue that "Allied has not alleged any additional damages … for which Allied may be compensated. Indeed, Allied has alleged the identical contract damages for which it has already recovered a judgment." While it is true that "care should be exercised to avoid double recoveries by allowing the same damage twice under different designations," there is no evidence in the record before us that Allied has ever recovered on its original judgment against KRI. *Ford Motor Co. v. Taylor,* 446 S.W.2d 521, 530 (Tenn.App.1969). It is only a double recovery of damages—*not successive judgments seeking a single recovery*—that is barred. *See* 47 Am.Jur.2d *Judgments* § 1008 (1995). The recovery of a judgment in the breach of contract action against KRI does not preclude the instant action.

Assuming, without deciding, that the necessary parties are present in the instant case to trigger the doctrine of collateral estoppel, none of the issues litigated in the two prior lawsuits were resolved there in a manner at variance with Allied's theory of misrepresentation against the individual defendants in the instant case.

The first affirmative defense posed by the defendants is the statute of limitations. T.C.A. § 28-3-105 provides that actions for injuries to personal or real property "shall be commenced within three (3) years from the accruing of the cause of action." T.C.A. § 28-3-105. The instant case was commenced on April 2, 1991. The defendants stress that Allied stated in its original complaint against KRI that it entered into a contract with KRI "on or about February 10, 1988." The defendants argue that Allied is now suing on a claim for fraudulent inducement to contract, that any "inducement" to contract logically must have predated the existence of the contract, and that therefore Allied's complaint runs afoul of T.C.A. § 28-3-105.

The premise underlying the defendants' position is factually incorrect. Allied's complaint in the case at bar alleges a number of fraudulent misrepresentations made at different times, some before it started work and some after. Allied clearly has a cause of action for any act of fraudulent misrepresentation *accruing* on or after April 2, 1988; but this does not end this phase of our inquiry. Allied has filed the affidavit of its president in which he asserts that no one at the firm was aware of any fraudulent misrepresentations by the defendants until sometime after the lighting and sound equipment was fully installed in May, 1988. The question then becomes when did Allied's cause of action for the tort of fraudulent misrepresentation accrue, as far as the record before us is concerned? The statutory phrase "from the accruing of the cause of action" found in T.C.A. § 28-3-105 has been construed to mean "from the time when the plaintiff knew or reasonably should have known that a cause

of action existed." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn.App.1976). Taking the president's affidavit as true, which we must under the teaching of *Byrd*, we conclude that the record before us shows that Allied's cause of action did not accrue until sometime after installation of the lighting and sound equipment was completed in May, 1988. Based on the record now before us, this suit was filed within the three-year limitations period.

■■■■■ The defendants' second and final affirmative defense asserts that Allied's tort claim for fraudulent misrepresentation in this action is repugnant to its earlier claim for breach of contract against KRI, and is therefore barred by the doctrine of election of remedies. That doctrine applies "where there are 'two existing alternative remedial rights, inconsistent and not reconcilable with each other.'" *Barnes v. Walker*, 234 S.W.2d 648, 650 (Tenn.1950) (quoting from *Phillips v. Rooker*, 134 Tenn. 457, 184 S.W. 12, 13 (1916)). The plaintiff must unequivocally choose one remedy and is thereafter estopped to resort to the other remedy. *Id.* The purpose of this doctrine is to prevent double redress for a single wrong. *Purcell Enterprises, Inc. v. State*, 631 S.W.2d 401, 409 (Tenn.App.1981).

■■■■■ For election of remedies to apply, the two remedies sought must be truly repugnant to one another. *Holder v. Martin*, 219 Tenn. 165, 407 S.W.2d 461, 465 (1966). In its first action, Allied sued KRI for breach of contract. In the case at bar, Allied sued Davis and Neely for fraudulent misrepresentation, a species of tort. We note that "[t]here is no inconsistency between different remedies all of which are based upon the affirmance or disaffirmance of the contract." *McQuiddy Printing Co. v. Hirsig*, 23 Tenn. App. 434, 134 S.W.2d 197, 203 (1939). Moreover, the appellate courts of this state have expressly stated that theories of breach of contract and fraud "are not repugnant or antagonistic to each other." *Tallent v. Fox*, 24 Tenn.App. 96, 141 S.W.2d 485, 490 (1940); *see also Sunderhaus v. Perel & Lowenstein*, 215 Tenn. 619, 388 S.W.2d 140, 143 (1965). The current action does not disavow the contract. The remedy sought in this lawsuit is not inconsistent with the one sought in the earlier action affirming the contract.

The issues raised are all found in favor of Allied. None of the grounds asserted in the defendants' motion for summary judgment and preserved as issues on appeal warrant summary judgment. Accordingly, this court finds that the defendants are not entitled to summary judgment. There are genuine issues for trial.

The judgment of the lower court is vacated and this cause is remanded for a trial on the merits. The costs of this appeal are taxed to the appellees.

GODDARD, P.J.(E.S.), and FRANKS, J., concur.

## *OPINION ON PETITION TO REHEAR*

The defendants have filed a petition to rehear in which they state that we misapprehended a material fact in our opinion. Specifically, they disagree with our assertion that Chancellor Rainwater, in the earlier suit against KRI, "found that fraudulent misrepresentations were made by KRI to Allied at the May 4 meeting." The defendants claim that the Chancellor did not find that KRI made misrepresentations.

We have again read the Chancellor's opinion in the KRI lawsuit. Our reading persuades us that while the Chancellor found that KRI made representations that bound it to a contract with Allied, he did not address, one way or the other, the question of whether KRI made intentional misrepresentations. Accordingly, the defendants' petition is hereby granted for the sole purpose of correcting the following erroneous language [Editor's Note: Change incorporated for publication purposes.]

IT IS SO ORDERED.

GODDARD, P.J., and FRANKS, J., concur.